IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ARIEL CASSONE, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | 1:23-CV-1197-RP |
| | § | |
| THE AUSTIN CHRONICLE CORP., | § | |
| | § | |
| Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| LOUIS BLACK, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |
| | § | |

## ORDER

Before the Court is a Motion to Dismiss filed by Defendant The Austin Chronicle Corp.

("the Chronicle"). Plaintiff Ariel Cassone ("Cassone") filed a response, (Dkt. 16), and the Chronicle

filed a reply, (Dkt. 19). Also before the Court is Cassone's Motion to Dismiss Counterclaims

brought by Defendant/Counter-Plaintiff Louis Black ("Black"). Having considered the parties'

submissions, the record, and the applicable law, the Court will grant both motions to dismiss.

### I. BACKGROUND

Cassone alleges the following facts: Around 1981, Black co-founded The Austin Chronicle,[1]

a small but influential local Austin newspaper. (Am. Compl., Dkt. 12). Black also co-founded

Austin's South by Southwest ("SXSW") conference and festival. (*Id.*). He served as editor of the

Chronicle until his retirement in 2017. (*Id.* at 11–12). During his tenure as editor of the Chronicle,

Black was an important figure in Austin's media and journalism scene. (*See id.* at 2–11).

---

[1] The Austin Chronicle is run by Defendant The Austin Chronicle Corp. (*Id.* at 4). For simplicity, the Court will refer to the newspaper and the corporation interchangeably as the "Chronicle."

Cassone first met Black in 2008 while attending SXSW. (*Id.* at 4). She was 27 years old at the time. (*Id.*). Black invited Cassone into his home and told her that she had a promising career in front of her and was interested in working with her. (*Id.*). Black was allegedly drinking heavily that evening and forcibly kissed her without her consent. (*Id.*). Cassone then left his house and shortly after returned to her home in New York. (*Id.*). Black left her a phone message asking her to get in touch with him after she had finished working in New York. (*Id.* at 4–5).

Eight years later, Black contacted Cassone when she came to Austin to direct a film. (*Id.* at 5). He told her that she was tremendously talented and kissed her on the mouth. (*Id.*). He allegedly then placed a fold of cash in her hand and invited her to a reception as his house. (*Id.*). This eventually turned into an employment relationship and Cassone then began working full-time for Black around March 2016. (*Id.*). She assisted him on projects for the Chronicle and his private media agency, Louis Black Productions. (*Id.*). She edited his writing, brainstormed ideas with him, and served as his personal assistant. (*Id.*).

On March 16, 2016, Black invited Cassone to his home and promised that he would take her under his wing as his protégé. (*Id.*). However, he allegedly told Cassone that in return she would have "to take of him," before putting his arm around her and motioning toward his genitals. (*Id.*). Cassone again left, but Black continued to make inappropriate sexual remarks following the incident. He sent Cassone unsolicited sexual emails using his Chronicle email address. (*Id.* at 6). He also made "constant sexual comments and propositions" to her. (*Id.*).

In September 2017, Black invited Cassone to his room at a hotel in Austin. (*Id.*). Once there, he allegedly made sexual advances on Cassone, eventually performing oral sex on her. (*Id.*). Cassone alleges that a string of sexual abuse and coercion followed this incident. She alleges that Black would withhold her salary unless she agreed to submit to his sexual demands and constantly commanded

her to send him nude and sexually explicit photos. (*Id.*). He would also allegedly send her explicit photos and messages. (*Id.*).

According to Cassone, this pattern of sexual abuse continued for several years. (*Id.* at 6–11). Cassone alleges that Black would frequently make trips on behalf of the Chronicle or to promote his media ventures and use those trips as occasions to force Cassone into having sex with him. (*Id.*). He also disparaged her position to other media professionals, which she alleges "rendered her increasingly unable to form professional connections or find work apart from" Black. (*Id.* at 11).

Cassone faults the Chronicle for allegedly enabling this harassment and abuse. She contends that the Chronicle was "willfully ignorant of the fact" that it benefitted from Cassone's forced labor and the situation in which she was required to perform sex acts for him in order to do media work with him. (*Id.*). She states that she was frequently paid through the Chronicle's PayPal account and through the company's credit card. (*Id.* at 11–12). She alleges that the Chronicle paid for a night for her and Black at the Four Seasons hotel during SXSW, where Black coerced Cassone to have sex with him. (*Id.* at 12). Cassone also alleges that the Chronicle paid for the reservations of multiple women who stayed at the Four Seasons hotel while Black was editor. (*Id.*). These women would allegedly go to the Chronicle office to obtain funds that Black would condition in some way on performing sex acts with him. (*Id.*). Cassone says that she frequently worked at the Chronicle's offices and was acquainted with many of its executives and staff, and occasionally attended meetings for the newspaper. (*Id.* at 12–13).

In 2022, Black made a marriage proposal to Cassone. (*Id.* at 13). She refused, and he began to retaliate by withholding her salary. (*Id.* at 13–14). At that point, the two had a permanent falling out. She filed the instant suit on October 3, 2023. (*Id.* at 1). She brings claims for assault, infliction of bodily injury, offensive physical contact, intentional infliction of emotional distress, breach of contract, and fraudulent inducement against Black. (*Id.* at 15–17). She also brings claims for forced

3

labor and violations of the Trafficking Victims' Protection Reauthorizing Act ("TVPRA") against both Black and the Chronicle. (*Id.* at 17–20).

Black filed a counterclaim on November 1, 2023, which he amended on December 5, 2023. (Dkts. 6, 11). He alleges that Cassone stole several valuable comic books and pulp magazines from his garage, worth around $15,000 total. (Am. Counterclaim, Dkt. 11, at 6–7). Cassone moved to dismiss the counterclaim, arguing that it is not a compulsory or factually related counterclaim. (Mot. Dismiss, Dkt. 14).

Separately, the Chronicle moved to dismiss Cassone's claims. (Dkt. 13). The Chronicle alleges that Cassone fails to plead factual allegations which plausibly implicate the Chronicle's own conduct. (*Id.*). It argues that the Chronicle did not benefit from Black's misconduct, did not participate in Black's misconduct, and did not know about his misconduct. (*Id.* at 10–14). Cassone filed a response, (Dkt. 16), and Black filed a reply, (Dkt. 19).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the

complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's

complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

### A. Cassone's Motion to Dismiss Black's Counterclaims

The Court begins with Cassone's motion to dismiss Black's counterclaims. (Dkt. 14). Cassone's complaint, as summarized by the Court above, alleges a multi-year pattern of sexual harassment whereby Black abused his power and position as editor of the Chronicle and Cassone's employer to coerce her into sexual servitude, ending only when Cassone rejected his marriage proposal in 2022. (*See* Am. Compl., Dkt. 12). Black's counterclaim alleges that Cassone improperly accessed his garage to steal several valuable comic books and pulp magazines. (Am. Counterclaim, Dkt. 11). Cassone argues that this counterclaim is unrelated to her complaint and therefore does not qualify for supplemental jurisdiction.[2] (Dkt. 14).

The Federal Rules of Civil Procedure categorize counterclaims as either compulsory or permissive. Fed. R. Civ. P. 13(a)–(b). If the counterclaim is compulsory, the Court automatically retains supplemental jurisdiction. *Id.*; *see also Jackson v. Hardrock Landscapes, LLC*, No. 1:21-CV-1003-DH, 2023 WL 2672402, at *4 (W.D. Tex. Mar. 28, 2023). If the claim is permissive, on the other

---

[2] The Court has original jurisdiction over Cassone's claims against Black, as she alleges violations of the federal TVPRA. See 28 U.S.C. §§ 7101, et seq. However, the Court does not have original jurisdiction over Black's counterclaim. Black alleges violations of state law, including counts for common law conversion and violation of the Texas Theft Liability Act. (Am. Counterclaim, Dkt. 11). Nor does the Court have diversity jurisdiction, as the counterclaim is for less than $75,000 and the parties are non-diverse. (*Id.* at 7; Mot. Dismiss, Dkt. 14, at 10–11).

hand, the counterclaim must independently meet the requirements for supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (District courts with original jurisdiction may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."); *see also NatureSweet, Ltd. v. Mastronardi Produce, Ltd.*, No. 3:12-CV-1424-G, 2013 WL 460068, at *4 (N.D. Tex. Feb. 6, 2013) (noting same).

### 1. Black's Counterclaims Are Not Compulsory

The Court begins its analysis with whether Black's counterclaim is compulsory. A counterclaim is compulsory if it "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P 13(a)(1). All other counterclaims are considered permissive. Fed. R. Civ. P. 13(b). The Fifth Circuit has ruled that a counterclaim arises out of the same transaction and occurrence as the original claim if: (1) the claims largely raise the same issues of fact or law; (2) claim preclusion would bar a subsequent suit on the counterclaim apart from the compulsory counterclaim rule; (3) the same evidence will support or refute the respective claims; or (4) there is a logical relation between the original claim and the counterclaim. *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85–86 (5th Cir. 1997). The general rule in this circuit is that the claim is compulsory if one of these four tests is met. *Id.* At 86. Applying these four factors, the Court finds that Black's counterclaim is not compulsory.

First, the issues of law are unrelated. The legal issues contain no overlap: the complaint alleges claims related to battery and sexual coercion, while the counterclaim alleges claims related to theft. Black does not allege that these two claims share any common elements.

Factually, while the issues do overlap, they do so only to a slight degree. Cassone alleges sexual abuse by and a forced sexual relationship with Black, including the fact that Black regularly allowed Cassone to access his property. (Am. Compl., Dkt. 12, at 10 ("In 2021, Mr. Black agreed to

provide Ms. Cassone his house on 38th Street in Austin.")). The complaint also alleges that the two

fell out when Cassone rejected Black's marriage proposal and he subsequently withheld her pay as

retaliation. (*Id.* at 11). Black argues that these facts overlap with his claims for theft because they

both rest "on the relationship between the parties, including any personal grudge held by Cassone

against Black that motivated any alleged actions undertaken by Cassone." (Resp., Dkt. 18, at 6).

This overlap is too marginal to render the counterclaim compulsory. The vast majority of

Cassone's factual allegations relate to her relationship with Black before they split. (*See* Am. Compl.,

Dkt. 12, at 1–11). Of the 30 paragraphs detailing their relationship, only one sentence relates to their

falling out. (*Id.* at 11). Both claims involve Cassone accessing Black's property, but those facts

appear to be minor parts of Cassone's claim. (*See id.*). Black alleges that Cassone stole the magazines

because of a "personal grudge." (Resp., Dkt. 18, at 6). However, the existence of that "grudge" does

not appear substantially related to determining whether Black sexually abused her or even whether

she is liable for stealing his vintage magazines.[3] The timeframes are also different: the alleged

burglary occurred after the sexual harassment and coercion took place. (*Id.*; Am. Counterclaim, Dkt.

11, at 2–3).

Cassone and Black had an employer/employee relationship for many years, and both claims

arise from that relationship. But the overlap ends there. In the employer/employee context, courts

have typically rejected the notion that discrimination claims against the employer are compulsory to

theft claims against the employee. *See Hernandez v. ARC Trading Co.*, 2018 WL 2017680, at *5 (N.D.

Tex. May 1, 2018) (finding no logical relationship between FLSA wage claims and theft of goods

---

[3] Wrongful intent is not an element of conversion. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Care Flight Air Ambulance Serv., Inc.*, 18 F.3d 323, 325 (5th Cir. 1994). As to intent for his statutory theft counterclaim, Black need only show a criminal intent to deprive him of his property. *See Pemex Exploracion y Produccion v. BASF Corp.*, 2013 WL 5514944, at *5, 8 (S.D. Tex. Oct. 1, 2013). Black need not show a "personal grudge" to demonstrate the intent to deprive; that scienter is met by showing that Cassone allegedly took and sold his property for her own gain. *Id.* Thus, Cassone's "grudge" does not seem likely to play a key factual role in either the claim or the counterclaim.

from restaurant); *Hunt, Gather LLC v. Andreasik*, No. 1:23-CV-627-RP, 2023 WL 4237357, at *4, *6 (W.D. Tex. June 28, 2023) (collecting cases and holding that employment discrimination claim was not compulsory or significantly related to trade secrets claim); *Cordero v. Voltaire, LLC*, No. A-13-CA-253-LY, 2013 WL 6415667 (W.D. Tex. Dec. 6, 2013) ("[T]he evidence needed to prove Defendant's counterclaims for theft, conversion, and breach of fiduciary duty is entirely different than the evidence needed to prove Plaintiffs' FLSA claim."). In employer/employee suits, the parties will necessarily have a shared factual history, but that alone is insufficient to make pre-termination harassment claims compulsory to post-termination/resignation theft claims. *Hunt, Gather*, 2023 WL 4237357, at *4–6. Even here, where Black allegedly sexually abused his employee for many years, it does not mean that all claims between them significantly overlap. The separate claims, while both involving their professional and personal relationships, relate to very different allegations of misconduct and do not share significant facts or evidence.

Turning to the second factor, the counterclaim would not be barred by res judicata. *See Tank Insulation*, 104 F.3d at 85–86. The claims are distinct, and Black would not be barred from bringing a claim for theft in another case on account of a largely unrelated claim for harassment asserted against him.

Third, the evidence of each claim is not likely to substantially support or refute the other claim.[4] Cassone's evidence will likely consist of Black's behavior and harassment prior to 2022, including the instances where Black allegedly assaulted or coerced her into having sex with him. Black's evidence will likely consist of Cassone entering his property and stealing his property. There is no substantial evidentiary overlap between these two claims. Black's sexual harassment would not excuse or legally justify Cassone's theft. Nor would Cassone's theft retroactively affect whether

---

[4] Black makes no mention of this factor in his response. (*See* Resp., Dkt. 18).

Black had sexually harassed or abused her. The claims are distinct, and proving one claim would not disprove the other or vice versa.

Fourth, the claims do not share a logical relationship. Black himself does not plead a logical relationship in his counterclaim, and his response alleges only that "Black's recovery hinges on whether Cassone's actions are a direct result of any personal ill-will possessed by Cassone . . . ." (*Id.* at 7–8). Black offers no support for this contention. Nor will the Court infer an element of retaliatory intent where none seems to exist. Neither conversion nor statutory theft depend on Cassone's ill-will. *See, e.g.,* *Nat'l Union Fire Ins.,* 18 F.3d at 325; *Pemex Exploracion,* 2013 WL 5514944, at *5–8. Cassone's actions may have been fueled by ill-will, but that does not materially bear on whether taking the vintage magazines constituted theft or conversion.[5]

"A logical relationship exists 'when the counterclaim arises from the same 'aggregate of operative facts' in that the same operative facts serve[ ] as the basis of both claims[.]'" *RPV, Ltd. as Tr. For Vill. Tr. V. Netsphere, Inc.,* 771 F. App'x 532, 535 (5th Cir. 2019) (quoting *Plant v. Blazer Fin. Servs., Inc. of Ga.,* 598 F.2d 1357, 1361 (5th Cir. 1979)). Black fails to show that the claims share operative facts, much less that the counterclaim arises from those facts.

Because the claims do not share substantially similar facts, do not depend on each other's resolution, and do not carry a logical relationship, the counterclaim is permissive, not compulsory.

2. Supplemental Jurisdiction Over Permissive Counterclaim

Because the counterclaim is permissive, it must independently satisfy the requirements for supplemental jurisdiction. 28 U.S.C. § 1367. The counterclaim must be "so related to the original claims that they derive from a common nucleus of operative facts." *Cordero,* 2013 WL 6415667, at *5 (quoting *United Mine Workers of Am. V. Gibbs,* 383 U.S. 715, 725 (1966)). In deciding whether two claims derive from a common nucleus of operative fact, "courts should look to whether a claimant

---

[5] Black's own amended counterclaim fails to allege any vendetta or grudge. (*See* Am. Counterclaim, Dkt. 12).

would ordinarily be expected to try all the claims under consideration in a single proceeding. *Gibbs*, 383 U.S. at 725. For similar reasons to its Rule 13 analysis, the Court finds that the claims are not sufficiently related to exercise supplemental jurisdiction.

Black's central argument on this point is that both claims relate to the relationship between himself and Cassone. However, "[t]he mere fact that the parties were once linked by an employer-employee relationship is insufficient when the claims would stir such different issues and rely on such different facts and evidence." *Cordero*, 2013 WL 6415667, at *5 (quoting *Lou v. Ma Lab'ys, Inc.*, No. C 12-05409 WHA, 2013 WL 3989425, at *3 (N.D. Cal. Aug. 2, 2013)); *see also Whatley v. Young Women's Christian Ass'n of NW Louis., Inc.*, 2006 WL 1453043, at *3 (W.D. La. May 18, 2006) (finding no common nucleus of facts between FLSA claim and state law claims for invasion of privacy, conversion, and intentional and negligent infliction of emotional distress where only nexus was employer-employee relationship); *Saenz v. Austin Roofer's Supply, LLC*, 664 F. Supp. 2d 704, 709 (W.D. Tex. 2009) ("[T]he employment relationship alone is insufficient to bring state law claims within the same nucleus of operative facts as a FLSA claim acting as the jurisdictional 'hook.'") (citing *Lyon v. Whisman*, 45 F.3d 758, 764 (3d Cir. 1995)).

As these cases hold, an employer's discrimination (or FLSA violation) does not substantially relate to an employee's post-termination conduct. Here, Black's alleged pattern of sexual abuse during the course of Cassone's employment does not substantially relate to a later alleged theft by Cassone. The events are separate and the time frame in which they occurred is different. The outer ambits of both claims may involve similar aspects of their personal and professional relationship, but the claims do not share a common nucleus of operative facts.

As a result, Black's counterclaims are not compulsory and they do not share a common nucleus of operative facts with Cassone's complaint. Accordingly, because the Court lacks

supplemental jurisdiction over the counterclaim, it will grant Cassone's motion to dismiss Black's counterclaim.[6]

## B. The Chronicle's Motion to Dismiss

The Chronicle's motion is more complex. The Chronicle acknowledges that Cassone details extensive allegations of sexual misconduct by Black towards her. (*See* Mot. Dismiss, Dkt. 13, at 3–5). However, the Chronicle argues that Cassone's "factual allegations about the Chronicle are scant." (*Id.* at 6). Because her complaint does not implicate the Chronicle in Black's wrongdoing, the Chronicle argues that Cassone cannot sustain a TVPRA claim against it. (*Id.* at 18).

### 1. Relevant Factual Allegations

First, it is worthwhile to recount the precise factual allegations involving the Chronicle in Cassone's complaint. Cassone alleges that her "salary, and the expenditures of its editor and co-founder, Mr. Black, were funded by The Austin Chronicle and Louis Black Productions." (Am. Compl., Dkt. 11, at 2). She worked at—but not for—the Chronicle and was "well known" to its executives and staff. (*Id.*). She "frequently worked" at the Chronicle's office and attended Chronicle meetings with Black, where Black would "occasionally pitch[] Ms. Cassone's ideas." (*Id.* at 13). Black funded Cassone's work-related expenses and salary using Chronicle funds, often from the Chronicle's PayPal account. (*Id.* at 3). Payments continued from this account until 2021—four years after Black's retirement from the newspaper. (*Id.*). Cassone alleges that "the source of her salary also varied unpredictably" coming from "Black, Louis Black Productions, or *The Austin Chronicle* directly." (*Id.* at 11). In 2018, Roland Swenson, the CEO of SXSW, visited Black in his home while Cassone was there. (*Id.* at 12). He asked if Black was paying his associates with the Chronicle's funds, and Black responded that he was. (*Id.*).

---

[6] Even if the Court did find that it could exercise supplemental jurisdiction, it would decline to do so under the statutory factors set forth in 28 U.S.C. § 1367(c). *See Enoch v. Lampasas Cty.*, 641 F.3d 155, 158–59 (5th Cir. 2011) (listing factors).

Cassone assisted Black on projects for the Chronicle, writing and brainstorming ideas with Black for the newspaper. (*Id.* at 5). The Chronicle financed Cassone's flight, hotel, and travel expenses from time to time. (*Id.* at 8). Cassone never received professional credit for her contributions to Black's work related to the Chronicle. (*Id.* at 10). She alleges that her "involvement in the business activities of the companies persisted for years" before and after Black's retirement. (*Id.* at 11). She also alleges that she "accepted the opportunity to work with Mr. Black because of his professional affiliation with the Chronicle and the opportunities he promised involving his work for same." (*Id.* at 11).

Cassone also alleges that Black "often used his Chronicle email address to send [] unsolicited sexual communications" to her. (*Id.* at 6). The Chronicle also "provided Ms. Cassone and Mr. Black a room at the Four Seasons during SXSW, listing Ms. Cassone's name under the reservation." (*Id.* at 12). Black allegedly coerced Cassone to have sex with him during while at the Four Seasons during that visit. (*Id.*).

Overall, Cassone concludes that "The Austin Chronicle [was] aware or willfully ignorant of the fact that it benefitted from Ms. Cassone's forced labor, and from the professional relationship in which she was required to engage in commercial sex acts for Mr. Black." (*Id.* at 11). She states that she was one of "several women Mr. Black manipulated to solicit sexual favors." (*Id.*). She alleges that Black, "enabled by the influence and resources of *The Austin Chronicle* . . . manipulated Ms. Cassone and other women for sex under the guise of professional membership." (*Id.*).

### 2. Applicable Statutes

Cassone brings three causes of action against the Chronicle: (1) trafficking of persons in violation of Texas law, Tex. Civ. Prac. & Rem. Code §§ 98.001, et seq.; (2) violations of the federal TVPRA, 18 U.S.C. § 1589(a), which generally prohibits trafficking or knowingly benefitting from the trafficking of a person; and (3) violations of the TVPRA under 18 U.S.C. § 1591(a), which prohibits

coercion into commercial sex or knowingly benefitting from that coercion. (Am. Compl., Dkt. 11, at 17–19).[7]

Section 1589 of the TVPRA relates to commercial sex trafficking. 18 U.S.C. § 1589(a). It prohibits any person from "knowingly provid[ing] or obtain[ing] the labor or services of a person" by means of (1) "force, threats of force, physical restraint, or threats of physical restraint to that person or another person;" (2) "serious harm or threats of serious harm to that person or another person;" (3) "abuse or threatened abuse of law or legal process;" or (4) any scheme intended "to cause the person to believe that, if that person did not perform such labor or services, that person or another would suffer serious harm or physical restraint." *Id.* The statute provides criminal penalties for any person who "knowingly benefits … from participation in a venture which has engaged in the providing or obtaining of labor or services" by such means, "knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services" by such means. *Id.* § 1589(b).

Cassone's state law cause of action is similar. Texas law provides trafficking victims a civil cause of action against anyone "who intentionally or knowingly benefits from participating in a venture that traffics another person" in violation of the Texas Penal Code. Tex. Civ. Prac. & Rem. Code § 98.002(a). This statute "closely resembles" the TVPRA and the Texas Supreme Court has applied federal courts' interpretations of the TVPRA to the state statute. *In re Facebook, Inc.*, 625 S.W.3d 80, 96–97 (Tex. 2021).

Section 1591 provides a criminal penalty for any person who "knowingly … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person knowing … that means of force, threats of force, fraud, coercion … or any

---

[7] 18 U.S.C. § 1589 and 18 U.S.C. § 1591(a) are criminal provisions. While Cassone brings her "causes of action" under these provisions, the true cause of action is 18 U.S.C. § 1595, which authorizes civil remedies for violations of the TVPRA.

combination of such means will be used to cause the person to engage in a commercial sex act … ." 18 U.S.C. § 1591(a)(1). The Act also provides a criminal penalty for any person who "knowingly benefits … from participating in a venture which has engaged in an act described in violation of paragraph (1)." *Id.* § 1591(a)(2).

To be liable, the defendant must "knowingly" or "intentionally" benefit from its participation in the TVPRA violation.[8] *See Harris v. Henry*, No. 1:22-CV-00366-LY, 2022 WL 16825200 (W.D. Tex. Nov. 7, 2022), *report and recommendation adopted*, No. 1:22-CV-366-LY, 2023 WL 3035423 (W.D. Tex. Jan. 11, 2023) ("[T]o state a claim under § 1589(a), a plaintiff must adequately plead that the defendant (1) provided or obtained the labor or services of plaintiff (2) "by means of" one of the enumerated means, and (3) did so "knowingly.") (citing *United States v. Toure*, 965 F.3d 393, 400 (5th Cir. 2020); *Hubbard v. Crow*, No. SA-23-CA-580-FB, 2023 WL 10366527 (W.D. Tex. Nov. 20, 2023) (same). The defendant must have "participat[ed] in a venture which that [defendant] knew or should have known has engaged in an act in violation of the TVPRA." 18 U.S.C. § 1595(a). The analysis is much the same for violations of § 1591(a). *See Lundstrom v. Choice Hotels Int'l, Inc.*, 2021 WL 5579117, at *3 (D. Col. Nov. 30, 2021) ("To state a claim under a § 1595(a) beneficiary theory, a plaintiff must allege facts from which it can reasonably inferred that (1) a defendant 'knowingly benefit[ted] financially or by receiving anything of value' (2) from participation in a venture that the defendant 'knew or should have known has engaged in' sex trafficking.") (quoting 18 U.S.C. § 1595(a)).

### 3. Knowingly Benefitted

Section 1595(a) requires two levels of knowledge: (1) the defendant must "knowingly benefit" from the venture and (2) they must have known or should have known the venture violated

---

[8] Section 1589 also imposes liability if the defendant is "in reckless disregard of the fact that the venture has engaged" in sex trafficking. 18 U.S.C. § 1589(b).

the TVPRA. 18 U.S.C. § 1595(a). The Court first addresses whether the Chronicle knowingly benefitted from Black's relationship with Cassone. Accepting Cassone's well-pled facts as true, the Court finds it plausible that the Chronicle benefitted from Cassone's employment relationship with Black.

The Chronicle argues that Cassone "fails to allege facts showing that the Chronicle 'benefitted,' knowingly or otherwise" from Black's alleged sexual abuse. (Mot. Dismiss, Dkt. 12, at 11–12). As the Chronicle argues, Cassone helped Black with "'projects for both the Chronicle and Louis Black Productions,' [] but identifies no Chronicle 'projects.'" (*Id.* at 12 (quoting Am. Compl., Dkt. 11)). While she brainstormed ideas with the Chronicle, she "identifies no such 'ideas'" nor alleges "the Chronicle adopted any." (*Id.*).

This defense is premature. At the 12(b)(6) stage, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Cassone need not identify specific projects or ideas that she developed for the Chronicle. It is readily plausible that, having pitched ideas and assisted its editor with business strategies, the Chronicle would have benefitted from Cassone's work. Again, the complaint "does not need detailed factual allegations," but must only provide "factual allegations that when assumed to be true raise a right to relief above the speculative level.'" *Cuvillier*, 503 F.3d at 401 (internal quotations omitted). Assuming that Cassone did assist Black in his professional activities, then it is similarly plausible that the Chronicle knowingly benefitted from Cassone's work. Accordingly, the Court finds that Cassone adequately pleads that the Chronicle was a knowing beneficiary of Cassone's work with Black.[9]

---

[9] The Court is more skeptical of the notion that the Chronicle knowingly benefitted from Cassone's trafficking or forced sexual labor specifically. The Chronicle knew Black employed Cassone, and it benefitted from that *employment relationship*. But the Court is not convinced that the "venture" can be drawn to include their entire employment relationship and that the Chronicle knowingly benefitted from Cassone's forced

### 4. Participation in a venture

The Court next turns to the Chronicle's argument that it did not "participat[e] in a venture" within the meaning of the TVPRA. (*See* Mot. Dismiss, Dkt. 13, at 12–13 ("Ms. Cassone's complaint, even after amendment, alleges no facts identifying a 'venture' that trafficked her or showing that the Chronicle participated in such a venture."); *id.* at 13 ("Cassone alleges no such facts showing a trafficking venture, nor showing that the Chronicle benefitted from participating in such a venture.")). Section 1591 defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of" the anti-trafficking provision. 28 U.S.C. § 1591(e)(4). Section 1595, however, does not define the term. 28 U.S.C. § 1595(a).

Courts have interpreted the omission of a definition under § 1595(a) in different ways. Because § 1595(a) imposes liability where a defendant "knew or should have known" about the violation, most courts have taken the position that Section 1591's actual knowledge requirement cannot be imputed onto the term as used in Section 1595(a). *See Lundstrom*, 2021 WL 5579117, at *3 ("[D]efendant is mistaken that a plaintiff bringing a civil claim under § 1595 must plausibly allege each element of criminal liability under § 1591."); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 935 (D. Ore. 2020) ("If we imputed [§ 1591's] standard into section 1595 . . . we would ignore [§ 1595's] 'knew or should have known' language."); *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021) (collecting cases for same holding). A minority of courts have taken the stricter position, imposing a requirement of actual knowledge to support liability. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("Plaintiff must allege specific conduct that furthered the sex trafficking venture. Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture."); *see also Powerex Corp.*

---

labor. Ultimately, the question is moot because the Court finds that the Chronicle did not have actual or constructive knowledge of any TVPRA violations.

*v. Reliant Energy Services, Inc.*, 551 U.S. 224, 232 (2007) ("A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning."). Although the Fifth Circuit has yet to rule on the issue, the Eleventh Circuit found that Section 1591's strict knowledge requirement should not be imported into Section 1595. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021). The Court finds the Eleventh Circuit's reasoning persuasive and adopts the majority approach.

Assuming, then, that Section 1595 does not require actual knowledge, the question becomes whether the Chronicle "participated in a venture" involving Cassone and Black. Imputing the remainder of Section 1591's definition, participation in a venture requires "assisting, supporting, or facilitating a violation of" the TVPRA. 18 U.S.C. § 1591(e)(4). Plainly, the Chronicle would occasionally pay Cassone, or Black would send payments to Cassone from the Chronicle's PayPal account. It is plausible, based on those payments, that the Chronicle supported or facilitated (if unwittingly) a relationship where Black used the support to violate the TVPRA. According to Cassone, it was her continued employment, along with Black's status at the Chronicle (among other ventures), that led her to stay with Black during his abuse. (Am. Compl., Dkt. 11). Therefore, the Court finds it plausible that the Chronicle assisted the TVPRA violations, even if it did so unknowingly.

### 5. Knew or Should Have Known

Ultimately, however, Cassone's complaint fails to meet the requisite element that the Chronicle "knew or should have known" of the trafficking venture. Put simply, Cassone's complaint is devoid of any allegations that demonstrate actual or constructive knowledge on the part of the Chronicle. The amended complaint does not directly plead that the Chronicle knew or should have known of the venture, but instead states that it was "aware or willfully ignorant of the fact that they benefitted from Ms. Cassone's forced labor . . . ." (Am. Compl., Dkt. 12, at 2). But Cassone offers

18

few allegations in support of this conclusion. She pleads no other instances of awareness. As to

ignorance, it is unclear why or how the Chronicle was willfully ignorant. Cassone worked as a

personal assistant to Black, which involved occasional work at or indirectly for the Chronicle.

Cassone offers no instances that would have prompted a reasonable person or company to be aware

of or even suspect inappropriate relations between Black and Cassone.[10] She never states that she

made an outcry, went to human resources, told individuals at the Chronicle about Black's conduct,

or took any action that would have prompted the newspaper to investigate forced labor or

trafficking. Absent these allegations, the inference that the Chronicle knew of any forced labor or

trafficking is unreasonable.

Cassone's complaint, as it stands now, fails to cross the line from "possible" to "plausible."

It is *possible* that the Chronicle deliberately chose to look the other way or that employees knew Black

behaved inappropriately. But the allegations do not suggest that inference is true. Even at the

pleading stage, Cassone must allege "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That

content is not present. With almost no facts suggesting how the Chronicle had constructive

knowledge, Cassone's allegation is conceivable, but not plausible. Accordingly, the Court will grant

the Chronicle's motion to dismiss.[11]

---

[10] It is worth noting that TVPRA violations require particularly egregious conduct, not merely inappropriate relations or sexual harassment. To be liable, the Chronicle must have known or had constructive knowledge of sex trafficking or forced sexual labor. Section 1589 requires a plaintiff to show she was forced to perform labor due to "force, threats of force, physical restraint, . . . serious harm, [or] abuse of law or legal process." 18 U.S.C. § 1589(a). Section 1591 requires "force, threats of force, fraud, [or] coercion." *Id.* § 1591(a). There is simply no indication that this extreme level of coercion or force was known or should have been known to the Chronicle.

[11] The parties acknowledge that Cassone's claim under Texas law "closely resembles" the federal TVPRA. For the same reason that the Court dismisses the TVPRA claim, it dismisses the claim under § 98.002 of the Texas Civil Practice and Remedies Code.

### C. Leave to Amend

Finally, Cassone asks for leave to amend, which the Chronicle opposes. (Resp., Dkt. 16, at 11; Reply, Dkt. 20, at 10–12). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002).

Rather than rule on a motion for leave without an attached proposed amended complaint, the Court will simply dismiss Cassone's claims against the Chronicle without prejudice. While Cassone does not plead factual allegations that support the Chronicle's knowledge, such allegations could be shown in an amended pleading. Cassone may therefore file a motion for leave to file an amended complaint, at which point the Court will assess the futility or viability of Cassone's updated allegations. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) (noting that futility is judged by Rule 12(b)(6) standards).

### IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that Cassone's Motion to Dismiss, (Dkt. 14), is **GRANTED**. Black's amended counterclaim is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that the Chronicle's Motion to Dismiss, (Dkt. 13), is **GRANTED**. Cassone's claims against the Chronicle are **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** on May 7, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE